UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAYNE CRAMER,

    Plaintiff,                                                      Civil Action No. 18-CV-10115

vs.                                                             HON. BERNARD A. FRIEDMAN

GENESEE COUNTY, et al.,

    Defendants.

_____/

**<u>OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS</u>**

This matter is before the Court on the motion of defendants Corizon Health, Inc., ("Corizon") and Corizon employees Candy Hoffman, Stephanie Jeffries, Amanda Jordan, Dennis Lloyd, and Janelle Palmer (the "Corizon defendants") to dismiss [docket entry 15]. This motion is fully briefed. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court will decide it without a hearing.

**FACTS**[1]

On January 12, 2015, plaintiff stood waiting for a bus somewhere near downtown Flint, Michigan. Tired of either standing or the cold, she walked to a nearby house and sat on the porch. The homeowner indicated that "she didn't want [plaintiff] there," so plaintiff returned to the bus stop. Pl.'s Resp. Ex. 1. The situation was not resolved, though: after some more interaction the homeowner's "boyfriend got all mad and ran over to the bus stop," and "punched [plaintiff] in the face." *Id.*

Plaintiff's boyfriend called the police, who arrested the homeowner's boyfriend. The police also ran plaintiff's drivers license in a national law-enforcement database. The police

---

[1] These facts are summarized from the complaint, defendants' motion, and plaintiff's deposition testimony.

then told plaintiff that a Florida court had issued a warrant for her arrest. Plaintiff protested, telling them that there was some mistake. The police disagreed, however, and arrested plaintiff. They took her to the Genesee County jail, where she was held for three days.

Plaintiff alleges that during her incarceration she was severely mistreated. According to her, when she arrived at the jail the guards immediately stripped her naked, never giving her jail clothes. The guards left her naked on a cell's cement floor and without food or water. At some point, defendant Tom Beagle, a sheriff's deputy, allegedly pushed her, "causing her [to] fall to the ground and suffer severe and debilitating injuries, including but not limited to, injuries to her back, hip and legs, multiple breaks and fractures which required surgery that included the insertion of a metal rod and three pins in the left leg/hip." Am. Compl. ¶ 11. While plaintiff was on the floor, Beagle allegedly attempted to roll her over using his foot. *Id.* Because she could not get up, she urinated and defecated on herself. *Id.* ¶ 14.

Nurses Jeffries and Roe, an unidentified nurse, watched plaintiff fall and cry out in pain, but they did not help her. *Id.* ¶ 21(b). Roe and Doe, another unidentified female present, mocked plaintiff after she fell, telling her that she was not really hurt. *Id.* ¶ 21(d). During this time, plaintiff repeatedly told defendants "that she sustained fractures." *Id.* ¶ 21(e). Jordan, another nurse, refused to schedule x-rays for plaintiff until three days after plaintiff suffered her injury. *Id.* ¶ 21(c). And Lloyd, the jail's physician, did not see her for two to three days and did not send her to a hospital. *Id.* ¶ 21(f). Additionally, plaintiff later explained her preexisting medical conditions to defendants, who ignored her and "deprived [her] of much of her medication." *Id.* ¶ 14. This collective abuse "necessitated emergency medical care, hospitalization, surgery, [and] rehabilitation," and plaintiff continues to suffer residual effects to this day. *Id.* ¶ 17.

Sometime later, plaintiff's daughter conducted some research on Facebook and allegedly discovered a "Jayne L. Cramer" from Florida. Plaintiff testified that, in her opinion, the warrant at issue was for this other Jayne's arrest.

Plaintiff filed her original complaint in early January 2018; a few days later she filed her amended complaint, asserting five counts: Count I, Fourth and Fourteenth Amendment violations as to all defendants; Count II, Eighth Amendment violations as to all defendants; Count III, negligence and gross negligence as to Beagle and Mary Roe; Count IV, negligence and gross negligence as to Jeffries, Jordan, Mary Doe, Lloyd, Hoffman, and Palmer; and Count V, "respondeat superior" as to Corizon.

The Corizon defendants and Corizon have filed a motion to dismiss as to Counts I, II, IV, and V. For the following reasons, the Court will grant in part and deny in part defendants' motion.

**LEGAL STANDARD**

Fed. R. Civ. P. 12 (b)(6) states that the Court may dismiss a complaint if it fails to "state a claim upon which relief can be granted." The Supreme Court has held that for a complaint to survive a motion to dismiss, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* And while Rule 12(b)(6) does not require "[d]etailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

# DISCUSSION

## I.     Counts I and II

The Sixth Circuit has articulated when, in the context of police-abuse claims, the Fourth, Eighth, and Fourteenth amendments' protections apply:

> Deciding which amendment should be applied depends on the status of the plaintiff at the time of the incident; that is, whether the plaintiff was a free citizen, convicted prisoner, or fit in some gray area in between the two. The Fourth Amendment's prohibition against unreasonable seizures bars excessive force against free citizens, while the Eighth Amendment's ban on cruel and unusual punishment bars excessive force against convicted persons. When a citizen does not fall clearly within either category—e.g., pretrial detainees—the Fourteenth Amendment's more generally applicable Due Process Clause governs to bar a governmental official's excessive use of force. . . .

*Burgess v. Fischer*, 735 F.3d 462, 472–73 (6th Cir. 2013) (citations omitted).

Here, plaintiff's Eighth Amendment claim, Count II, must be dismissed because at the time of the incident she was not convicted. Count I, however, which contains plaintiff's Fourth and Fourteenth Amendment claims, is a different story.

Determining when a free person (protected by the Fourth Amendment) becomes a pretrial detainee (protected by the Fourteenth Amendment) is not easy.[2] "This court has previously identified the dividing line . . . at the probable-cause hearing." *Guy v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 687 F. App'x 471, 474 n.3 (6th Cir. 2017) (citation and quotation marks omitted). The swearing out of an arrest warrant qualifies as a "probable-cause hearing." *Id.* Consequently, if a plaintiff was "detained pursuant to a judicially approved warrant," she is considered a pretrial detainee and can bring an excessive-force claim only under the Fourteenth

---

[2] This point is important to litigants because the Fourth Amendment standard (whether the action was reasonable) is significantly easier to meet than the Fourteenth Amendment standard (whether the action shocks the conscience). *See Darrah v. City of Oak Park*, 255 F.3d 301, 307 (6th Cir. 2001).

4

Amendment. *Id.* But "in the case of a warrantless arrest, the Fourth Amendment applies until the arrestee is taken before a magistrate judge, or other judicial official, to determine whether the arrest and continued detention were based on probable cause." *Aldini v. Johnson*, 609 F.3d 858, 867 (6th Cir. 2010) (citation and quotation marks omitted).

Here, it is undisputed that the alleged violations occurred before a probable-cause hearing, but the Corizon defendants argue that plaintiff was arrested pursuant to a valid Florida arrest warrant:

> Upon information and belief, the Michigan State Police arrested Plaintiff on January 12, 2015, after responding to a disturbance near a bus stop on the 800 block of West Court Street. After running her name through a law enforcement database, the police found a valid arrest warrant for Cramer in Florida. She was charged in Genesee County with a single count of being a fugitive from justice, but the charges were later dropped after Florida courts decided they did not wish to transport her back to the state for prosecution. (Exhibit F).

Defs.' Mot. p. 3. Defendants' Ex. F—entitled "Booking History Report"—purports to be a law-enforcement-database search showing that in January 2015 a Florida state court issued a warrant for the arrest of a female named "Jayne Cramer."

When considering a motion to dismiss, the Court generally may not accept "matters outside the pleadings" unless it converts the motion to "one for summary judgment." Fed. R. Civ. P. 12(d). The Court may, however, consider public records—like arrest warrants—without converting the motion. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Importantly, though, the Court should not consider an incomplete or partial public record that could give a distorted view of the facts. *See id.* Therefore, when deciding a Rule 12(b)(6) motion, the Court should consider only those public records "not subject to reasonable dispute." *Passa v. City of Columbus,* 123 F. App'x 694, 697 (6th Cir. 2005).

5

It is not clear whether Ex. F is "not subject to reasonable dispute." First, it is, at best, an incomplete or partial public record. It is just fifteen lines of text consisting of fewer than 50 "words," most of which are either abbreviated or single letters, and it is contextualized only by counsel's explanation. Second, and more importantly, it contains no self-authenticating details, such as what database was searched, the query terms used, who searched, whether there were other results, etc. Indeed, the truly identifying information—social security number and birth date—has been redacted. Also, plaintiff believes, based on a social-media search, that the warrant is for another Jayne Cramer. Taking all of this together, it is not clear beyond reasonable dispute that Ex. F. is actually a valid Florida arrest warrant for plaintiff that plaintiff's arresting officer discovered when he searched the law-enforcement database. Until defendants support, explain, and authenticate Ex. F with additional facts—e.g., affidavits or deposition testimony—the Court cannot rely on it as a public record. For the purposes of this motion, the Court considers plaintiff to have been arrested absent an arrest warrant and, thus, will analyze whether it can reasonably infer defendants' liability under the Fourth Amendment based on plaintiff's allegations.[3]

The Sixth Circuit recently articulated the Fourth Amendment's objective reasonableness standard as follows:

> To determine whether there is a Fourth Amendment violation, . . . [we look] to the reasonableness of a defendant's actions; we do not consider the underlying intent or motivation of a defendant. *Dunigan v. Noble,* 390 F.3d 486, 493 (6th Cir. 2004); *see also Graham v. Connor,* 490 U.S. 386, 396–97 (1989). The objective reasonableness test requires courts to consider the reasonableness of an officer's actions in light of the totality of the circumstances, and from the perspective of a reasonable officer on the scene, rather than with the advantage of hindsight. *Darrah,* 255 F.3d at 307. . . . We balance "the nature and quality of the intrusion

---

[3] The Court notes in the Sixth Circuit, denial-of-medical-care claims can be made under either the Fourth or Fourteenth amendments. *Bonner-Turner v. City of Ecorse*, 627 F. App'x 400, 406 (6th Cir. 2015) (citing *Boone v. Spurgess*, 385 F.3d 923, 933–34 (6th Cir. 2004) ("[T]here seems to be no logical distinction between excessive force claims and denial of medical care claims when determining the applicability of the Fourth Amendment.").

6

> on [a plaintiff's] Fourth Amendment interests against the countervailing governmental interests at stake." *Ciminillo v. Streicher,* 434 F.3d 461, 466–67 (6th Cir. 2006).

*Smith v. Erie Cty. Sheriff's Dep't*, 603 F. App'x 414, 419 (6th Cir. 2015) (citations edited).

The Court must evaluate each defendant separately: The amended complaint fails to allege facts that would allow the Court to reasonably infer that Hoffman or Palmer is liable for violating plaintiff's Fourth Amendment rights. It is utterly devoid of specific allegations against them. Its only allegations that could apply to them are the generic allegations that all defendants knew of plaintiff's preexisting medical condition but refused to provide her with her full complement of medication; all defendants knew about plaintiff's "serious" fall yet refused to assist plaintiff or provide x-rays; and all defendants knew that plaintiff could not walk but would not help her use the restroom or get food. Am. Compl. ¶¶ 13, 21. The amended complaint fails to allege, however, what role Hoffman and Palmer played in the incident, their job titles, when plaintiff saw and/or talked to them, what precisely they saw or heard, and whether they were in a position to provide medication or other help. It also fails to allege plaintiff's preexisting condition(s), what medications and how much of each she normally took, and what defendants provided her. Without these details, the Court cannot infer that their actions were unreasonable.

Turning to Lloyd, Jordan, and Jeffries, the Court, viewing the facts in the light most favorable to plaintiff, can reasonably infer that they violated plaintiff's Fourth Amendment rights. Plaintiff alleges that jail physician Lloyd refused to examine her for several days, even though he knew right away about her fall and her specific complaints. She alleges that nurse Jordan could have scheduled x-rays but refused to do so until three days after plaintiff's fall, despite plaintiff's repeated statements to Jordan that plaintiff had fractured bones. Plaintiff further alleges that nurse Jeffries watched Beagle push plaintiff, heard her cries of pain, and was aware that her injuries were

7

severe, yet refused to help her. The Court can reasonably infer that the actions of Lloyd, Jordan, and Jeffries constituted an unreasonable denial of medical attention under the Fourth Amendment.

## II. Count IV

Plaintiff alleges that the Corizon defendants were negligent and grossly negligent by not treating her. Defendants argue that these claims should be brought under medical malpractice, not negligence.

At the outset, the Court will dismiss the gross negligence claims. Under Michigan law, no "gross negligence" cause of action exists. The Michigan Court of Appeals[4], previous opinions issued by this Court[5], and the United States District Court for the Western District of Michigan[6] agree. The gross negligence claims in Count IV are dismissed, as are the Count III gross negligence claims asserted against Beagle and Roe.

The Court turns next to the question of whether Count IV sounds in negligence or medical malpractice. As negligence and medical malpractice are state-law claims, the Court's analysis applies Michigan law. Distinguishing which actions sound "in medical malpractice and [which sound] in ordinary negligence" has long "troubled the bench and bar in Michigan." *Bryant v. Oakpointe Villa Nursing Ctr.*, 684 N.W.2d 864, 876 (Mich. 2004). The Michigan Supreme Court articulated the standard in *Bryant*:

---

[4] *See, e.g.*, *Cummins v. Robinson Twp.*, 770 N.W.2d 421, 433 (Mich. Ct. App. 2009) ("The governmental immunity statute does not itself create a cause of action called 'gross negligence.'").

[5] *See, e.g.*, *Johnson v. Williams*, No. 15-13856, 2017 WL 4236548, at *16 (E.D. Mich. Sept. 25, 2017) ("However, Defendant correctly asserts that gross negligence claims no longer are independent causes of action under Michigan law, since the Courts have repudiated contributory negligence principles and adopted comparative negligence. Rather, gross negligence exists as a way to plead around state imposed qualified immunity, as explained above, and to establish caps on damages. Thus, while gross negligence is an important substantive concept under Michigan law, there is no independent cause of action for gross negligence." (citations omitted)).

[6] *See, e.g.*, *Jones v. Corr. Med. Servs., Inc.*, 845 F. Supp. 2d 824, 846 (W.D. Mich. 2012) ("Michigan law does not, as Plaintiff implies, allow a claim sounding in medical malpractice to be brought as a 'gross negligence' claim under [state law], Mich. Comp. Laws § 691.1407. Instead, the courts appear to recognize that both governmental immunity and the malpractice requirements can apply to a plaintiff's claim.") (citing *Costa v. Cmty. Emergency Med. Servs., Inc.,* 716 N.W.2d 236 (Mich. Ct. App. 2006)).

> First, medical malpractice can occur only "within the course of a professional relationship." *Dorris*, *supra* at 45, 594 N.W.2d 455 (citation omitted). Second, claims of medical malpractice necessarily "raise questions involving medical judgment." *Id.* at 46, 594 N.W.2d 455. Claims of ordinary negligence, by contrast, "raise issues that are within the common knowledge and experience of the [fact-finder]." *Id.* Therefore, a court must ask two fundamental questions in determining whether a claim sounds in ordinary negligence or medical malpractice: (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience.

*Id.* at 871. Here, Count IV is not based on poor treatment, but on no treatment. Under *Bryant*, a total lack of treatment cannot be medical malpractice. *Id.* at 875–76 (stating that such a claim sounds in ordinary negligence when it alleges both that the defendants knew of a problem that would be obvious to a layperson, and that the claimed harm was caused by the medical professional's inaction rather than bad actions—i.e., their lack of steps instead of missteps).[7]

---

[7] An extensive quotation from *Bryant*, 684 N.W.2d at 875–76, helps explain this reasoning:

> We turn, finally, to a claim fundamentally unlike those discussed previously. Plaintiff alleges that defendant "[n]egligently and recklessly fail[ed] to take steps to protect plaintiff's decedent when she was, in fact, discovered on March 1 [1997] entangled between the bed rails and the mattress."
>
> This claim refers to an incident on March 1, 1997-the day before Ms. Hunt was asphyxiated-when two of defendant's CENAs found Ms. Hunt tangled in her bedding and dangerously close to asphyxiating herself in the bed rails. According to the CENAs, they moved Ms. Hunt away from the rail and informed their supervising nurses that Ms. Hunt was at risk of asphyxiation.
>
> Plaintiff now contends, therefore, that defendant had notice of the risk of asphyxiation through the knowledge of its agents and, despite this knowledge of the problem, *defendant did nothing to rectify it*. It bears repeating that plaintiff's allegation in this claim is not that defendant took inappropriate steps in dealing with the patient's compulsive sliding problem or that defendant's agents were negligent in creating the hazard in the first place. Instead, plaintiff claims that defendant knew of the hazard that led to her death and did nothing about it.
>
> This claim sounds in ordinary negligence. No expert testimony is necessary to determine whether defendant's employees should have taken *some* sort of corrective action to prevent future harm after learning of the hazard. The fact-finder can rely on common knowledge and experience in determining whether defendant ought to have made an attempt to reduce a known risk of imminent harm to one of its charges.

This case is similar to *Bryant*. As plaintiff notes in her response, "the gravamen of" Count IV is that the Corizon defendants "failed to provide any medical care or respond to Ms. Cramer at a time that she was clearly in extreme pain." Pl.'s Resp. p. 10. Plaintiff's claim is not that defendants' inadequately treated her, but that they failed to treat her. Also, a fact-finder can sufficiently weigh each of plaintiff's examples of a lack of treatment—e.g., whether Jeffries should have helped her after seeing her fall and hearing her cry out; whether Lloyd should have attended to her; and whether Jordan, hearing her claim that she had suffered fractures, should have x-rayed her; or, whether they should have sent her to a nearby hospital.[8] Therefore, the Court will not recast Count III as a medical-malpractice claim. For the same reasons given in Section I the Court can reasonably infer that Jeffries, Lloyd, and Jordan were negligent based on the complaint

### III. Count V

Plaintiff concedes that Corizon "cannot be held responsible for the § 1983 Constitutional violation of its employees on the basis of Respondeat Superior." Pl.'s Mot. p. 13. However, she argues, under generally applicable Michigan law, Corizon can be held responsible for the negligence claims asserted in Count IV. Defendant argues only that because Count IV should sound in medical malpractice, and because plaintiff failed to meet certain state deadlines for a medical malpractice claim, the Court should dismiss Count V.

Because the Court will not dismiss or recast plaintiff's Count IV negligence claims as medical-malpractice claims, Count V should not be dismissed insofar as it applies to Count IV. Insofar as it applies to Count I, however, Count V is dismissed.

---

[8] The Court notes, however, that the question of whether defendants gave plaintiff sufficient medication may be a medical-malpractice question, as it appears that defendants gave plaintiff some medication, just not as much as she wanted. Because plaintiff does not cite that allegation in the part of its response that addresses Count III, and because all of plaintiff's other examples are about a total lack of treatment rather than inadequate treatment, the Court will not further discuss it, but merely notes it here. That alone is not enough to recast Count III as a medical-malpractice claim.

## IV. Defendant Genesee County Sheriff's Department

To the extent plaintiff's complaint states claims against the Genesee County Sheriff's Department, they must be dismissed because a "police department is not an entity that is subject to suit." *Haney v. 5th E. Dist. Police Dep't*, No. 12-CV-14684, 2012 WL 5389914, at *3 (E.D. Mich. Nov. 5, 2012) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)).

## V. Conclusion

For the reasons stated above,

IT IS ORDERED that the motion to dismiss is granted as to the following claims, which are dismissed: all claims against defendants Hoffman, Palmer, and the Genesee County Sheriff's Department; the gross negligence claims in Counts III and IV; Count II; and Count V as it relates to § 1983 claims

IT IS FURTHER ORDERED that the motion to dismiss is denied as to the following claims: Count I, Fourth/Fourteenth Amendment claims asserted against Genesee County, Roe, Doe, Lloyd, Jordan, Jeffries, and Beagle; Count III, negligence claims asserted against Roe and Beagle; Count IV, negligence claims asserted against Doe, Lloyd, Jordan, and Jeffries; and Count V, respondeat superior asserted against Corizon regarding the negligence claims asserted in Count IV.

Dated: June 14, 2018  
Detroit, Michigan

s/Bernard A. Friedman  
BERNARD A. FRIEDMAN  
SENIOR UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 14, 2018.

s/Johnetta M. Curry-Williams  
Case Manager